FILED
5th JUDICIAL DISTRICT COURT
Eddy County
6/21/2021 8:58 AM
KAREN CHRISTESSON
CLERK OF THE COURT
Sarah Jimenez

**FIFTH JUDICIAL DISTRICT COURT**
**STATE OF NEW MEXICO**
**COUNTY OF EDDY**

| | |
|---|---|
| CONSTRUCTORS, INC. § | |
| Plaintiff, § | |
| § | |
| v. § | |
| § | No. ~~CV-~~ D-503-CV-2021-00424 |
| § | Case assigned to Riordan, Eileen P. |
| BALDWIN-COX AGENCY, LLC, and § | |
| BRENT BALDWIN § | |
| Defendant. § | |

## PLAINTIFF CONSTRUCTORS' ORIGINAL COMPLAINT FOR FRAUDULENT AND/OR NEGLIGENT MISREPRESENTATIONS AND NONDISCLOSURE, AND OTHER CLAIMS

**COMES NOW** CONSTRUCTORS, INC. (*"Plaintiff"*), by and through its attorneys, Martin, Dugan, and Martin, and for *Complaint* against BALDWIN-COX AGENCY, LLC (now known as BCA Holdings, LLC) and BRENT BALDWIN (*"Defendants"*), states:

### I. PARTIES AND JURISDICTION

1. Plaintiff is a resident and citizen of Eddy County, New Mexico.

2. Defendant Baldwin-Cox Agency, LLC, n/k/a BCA Holdings LLC (*"BCA"*), is a Texas limited liability company and a resident of Texas.

    a. Pursuant to NMSA 1978, § 38-1-6.1 and/or §38-1-16(B), BCA may be served with process by service upon any manager or statutory agent of the company, including its presidents William Baldwin and Brent Baldwin.

Exhibit A

   i. William Baldwin is BCA's registered, statutory agent for service of process in Texas and a president and manager of BCA.

   ii. Brent Baldwin is a manager and President of BCA.

   iii. Both Brent Baldwin and William Baldwin, as agents of BCA, may be served with process at BCA's and their registered office and/or primary place of business, 5930 Preston View Blvd. Ste 200, Dallas, Texas 75240.

3. Defendant Brent Baldwin ("*Baldwin*") is an individual and resident of Texas and may be served with process at his primary place of business, 5930 Preston View Blvd. Ste 200, Dallas, Texas 75240, or such other place as he may be found.

4. Pursuant to NMRA 1-004(E)(3), both Brent Baldwin and BCA may be served with process by mail or commercial courier service.

5. This Court has jurisdiction over the subject matter of this claim and the parties named herein. The amount in controversy is within the jurisdiction of the Court, exclusive of interest and costs.

6. Moreover, Defendants submitted themselves to the jurisdiction of this Court by regularly and systematically engaging in business within this state, by engaging in a transaction of business within this state out of which this action arises, and/or by committing a tort within this state out of which this action arises – all as more particularly pleaded below.  NMSA § 38-1-16.

7. Venue is proper in this Court pursuant to N.M.S.A. 38-3-1 because Plaintiff resides in Eddy County, New Mexico.

## II. FACTUAL BACKGROUND

8. Plaintiff Constructors, Inc. is a construction company located in Carlsbad, New Mexico.

9. Plaintiff David Shoup is the primary owner of Constructors.

10. This action arises out of misrepresentations made by Defendants BCA and Baldwin pertaining to its insured, Mans Construction LLC ("***Mans***" or "***Mans Construction***").

11. In 2018, Constructors was awarded a highway project in Sunland Park, Doña Ana County, New Mexico, known as NMDOT Sunland Park CN 100160–A (the "***Project***" or "***Sunland Project***").

12. The Project was for a total construction price of $12,474,207.30.

13. Constructors retained MANS as a subcontractor on the Project.

14. On or about May 2, 2018, Constructors entered into two (2) subcontracts with MANS. The subcontracts were designated "Subcontract #: 170225-6" and "Subcontract #: 170225-7" (collectively, the "*Subcontracts,*" and individually "*Subcontract No. 6*" and "*Subcontract No. 7*").

15. Subcontract No. 6 was for $3,591,185.16; Subcontract No. 7 was for $883,504.96.

16. Mans and Constructors agreed the high-risk items would be bonded.

17. The parties placed the high-risk items for which a financial default was more concerning on Subcontract No. 6 (e.g., suppliers), which required a bond. The parties placed the low-risk items (e.g., mobilization), on Subcontract No. 7, where a bond would not be required.

18. Subcontract No. 6 expressly provides:

    > Section 5: The Subcontractor shall, upon request of Contractor, concurrent with the execution of this Subcontract provide to Contractor, appropriate surety bonds guaranteeing the complete performance of all work under this Subcontract and payment of all indebtedness incurred in the performance of the Work, with coverage equal to the stated amount of the Subcontract. These bonds shall be executed by a surety acceptable to the Contractor and in a form satisfactory to the Contractor.

19. The Project began in May of 2018.

20. Constructors requested Mans provide the required bond.

21. Frankie Torres, Vice President of Mans, represented to Constructors that its bonding agent had assured Mans it would soon procure the bond.

22. Constructors requested a letter from MANS's bonding company verifying that fact.

23. Defendants Brent Baldwin and BCA subsequently provided that letter.

24. That letter from Defendants is the primary subject of this suit.

25. Attached hereto as Exhibit 1 is the letter dated June 27, 2018, from Defendants Brent Baldwin and BCA "To Whom It May Concern" regarding Mans Construction LLC – Bonding (the "*Misrepresentation Letter*")

26. Defendants misrepresented and/or failed to disclose the truth in the Misrepresentation Letter.

27. On June 27, 2018, Frankie Torres provided Constructors the Misrepresentation Letter.

28. Mr. Baldwin and BCA "highly recommended" Mans to Constructors.

29. Mr. Baldwin misrepresented they "have bonded Mans for the past 4 years without any issues."

30. Mr. Baldwin misrepresented he was awaiting interim updates from Man's CPA "to extend approvals," and would have them in the next week or two.

31. Constructors was misled by Defendants' Misrepresentation Letter.

32. Constructors was kept in the dark as to the "real truth."

33. In reliance on the Misrepresentation Letter, Constructors did not immediately terminate the Subcontracts.

34. Over time, it became clear those representations were false and Mans would not be able to procure the required bond, pay its suppliers and perform its Subcontracts.

35. When the truth – or much of it – came to light in January and February 2019, Constructors sought to mitigate its damages and terminated Mans.

36. Mans's timely completion of its work was essential to completing the entire Project on schedule and avoiding NMDOT liquidated damages penalties for delay.

37. However, beginning early and continuing throughout the Project, Mans failed to timely and/or properly complete its required tasks.

38. As time progressed, it became clear Mans's financial difficulties precluded it from hiring sufficient workers and suppliers and/or timely paying those workers and suppliers.

39. Several of those suppliers threatened bond claims on Constructors' bond.

40. Constructors was forced to pay twice for work performed – first to Mans and then second to the unpaid suppliers.

41. Mans delayed the Project and caused Constructors substantial damages in liquidated damages claims by the NMDOT.

42. By February 2019, Constructors had no choice but to terminate Mans and perform the subcontract work itself.

43. Constructors relied on Defendants and the Misrepresentation Letter to its detriment.

44. In fact, Mans was in terrible financial condition before the June 27, 2018, Misrepresentation Letter, and Defendants knew and/or reasonably should have known it.

45. Prior to the June 27 Misrepresentation Letter, Mans had already been turned down by its primary bonding company, Hudson Insurance, and at least one other underwriter.

46. Defendants' misrepresentations and/or failure to disclose in the Misrepresentation Letter caused Plaintiff substantial damages.

Exhibit A

47. Plaintiff seeks to recover actual and punitive damages for Defendants' negligent and intentional misrepresentations and/or statutory violations.

### III.  FRAUDULENT MISREPRESENTATION

48. Plaintiff adopts by reference and incorporates the allegations contained in the above paragraphs.

49. Plaintiff may recover from Defendants for fraudulent misrepresentations.

50. Plaintiff contends that Defendants' misrepresentations were statements as to present facts. To the extent that the statements are expressions of opinion, however, Plaintiff alleges the statements are actionable as statements of fact because:

   a. Defendants made the promise or statement as to a future event with an actual fraudulent intent, and made the promise or misrepresentation with the intention of deceiving and defrauding Plaintiff; and/or

   b. Defendants made the statements based on contrary facts peculiarly within the Defendants' knowledge; and/or

   c. Defendants made the statements based on a concealment of known facts; and/or

   d. Defendants made the statements as to future events as part of an overall pattern designed to lead Plaintiff to act to its detriment, and in such a way as harmfully to alter a legal right possessed by Plaintiff, especially because Defendants stated an opinion or belief as to future occurrences which had no support by the facts at the time the opinions or beliefs were given.

*Golden Cone Concepts, Inc. v. Villa Linda Mall, Ltd.*, 113 N.M. 9, 820 P.2d 1323 (N.M., 1991); *Register v. Roberson Construction Co.*, 106 N.M. 243, 741 P.2d 1364 (1987).

51. Defendants misrepresented in the Misrepresentation Letter that,

    a. Mans was in "fine standing with our agency";
    b. "We have bonded MANS for the past 4 years without any issues – we've extended bonds for jobs up to $5MM";
    c. "We are currently awaiting a few interim updates from their CPA in order to extend approvals for pending bond needs";
    d. "We expect to have what we need in the next week or two";
    e. "[A]pproved bonds will be written with an A Rated and U.S. Treasury Listed surety"; and/or
    f. "[W]e can highly recommend MANS to you...."

52. Either Defendants knew the falsity of the above representations or the representations were recklessly made.

53. The representations were made with the intent to deceive and to induce Plaintiff (or someone within Plaintiffs' class) to rely on the representations.

54. Defendants knew or had reason to know that Plaintiff (or someone within Plaintiff's class) would rely on the misrepresentations.

55. Plaintiff justifiably and/or reasonably relied upon the misrepresentations.

56. Plaintiff proximately suffered damages, including but not limited to loss of the benefit of the bargain, actual and consequential damages, which Plaintiff seeks to recover herein.

57. Also, because Defendants' actions were malicious, willful, reckless, wanton, fraudulent, and/or in bad faith, Plaintiff may recover punitive damages.

## IV. NEGLIGENT MISREPRESENTATION

58. Plaintiff adopts by reference and incorporates the allegations contained in the above paragraphs, including particularly Section III.

59. Plaintiff may also recover from Defendants for negligent misrepresentations.

60. New Mexico law on negligent misrepresentation generally follows Section 552 of the Restatement (Second) of Torts (1977). *First Interstate Bank v. Foutz*, 107 N.M. 749, 751, 764 P.2d 1307, 1309 (1988).

61. In the course of its business, profession or employment, Defendants negligently and/or intentionally supplied Plaintiff materially incorrect information for Plaintiff's guidance in Plaintiff's business transaction.

62. Defendants had no reasonable ground for believing that the information was correct and/or knew the information was false or misleading.

63. Defendants intended Plaintiff to rely upon that incorrect and/or incomplete information.

64. Defendants knew or reasonably should have known that Plaintiff would rely upon the incorrect and/or incomplete information.

65. Certainly, Plaintiff was in the class of persons reasonably expected to rely upon such type of information.

66. Plaintiff did, in fact, reasonably rely on the incorrect and/or incomplete information.

67. Defendants' negligent misrepresentations proximately caused Plaintiff damages, which Plaintiff seeks herein, in addition to punitive damages.

### V.    FRAUDULENT AND/OR NEGLIGENT NONDISCLOSURE

68. Plaintiff adopts by reference and incorporates the allegations contained in the above paragraphs, and particularly Counts III and IV.

69. Plaintiff may also recover from Defendants for fraudulent and/or negligent nondisclosure and concealment and/or constructive fraud. <u>Restatement of Torts</u>, § 551; <u>McElhannon v. Ford</u>, 134 N.M. 124, 73 P.3d 827 (N.M.App., 2003).

70. "Concealment becomes a fraud where it is effected by misleading and deceptive talk, acts, or conduct, where it is accompanied by misrepresentations, or where, in addition to a party's silence, there is any statement, word, or act on his part which tends affirmatively to a suppression of the truth, to a covering up or disguising of the truth, or to a withdrawal or distraction of a party's attention from the real facts; then the line is overstepped, and the concealment becomes a fraud. Such conduct is designated 'actual concealment', and it produces the same result in law as positive misrepresentation." 23 Am. Jur. on Fraud and Deceit. § 93 (quoted in *Mason v. Salomon*, 62 N.M. 425, 311 P.2d 652 (N.M. 1957)).

71. Defendants knew of material facts, had a duty to disclose, and remained silent.

72. Defendants' duty to disclose arose because (a) Defendants had knowledge that Plaintiff was acting under a mistaken belief; (b) Defendants had superior knowledge that was not within Plaintiff's reach and could not have been discovered by the exercise of reasonable diligence; and/or (c) Defendants knew that Plaintiff was about to act in reliance upon that fact in in a transaction with Mans Construction. *Restatement of Torts*, § 551(2).

73. Defendants knew that Plaintiff was requesting information on Mans's bonding status.

74. Defendants withheld certain material facts from Plaintiff, including the facts set forth above, and generally characterized as follows:

    a. that Defendants had insufficient working capital to procure a bond;

    b. that, in May 2018, Mans's primary bonding company, Hudson Insurance Company, had declined to issue a bond to Mans based on Mans' poor financial condition, including its total debt, maxed bank-line and poor debt-to-worth ratio.

    c. That, prior to the Misrepresentation Letter, other bonding companies had declined to issue Mans bonds based on Mans' poor financial condition, and particularly its working capital position;

    d. That Mans would need to improve its financial position before Defendants could procure a bond;

    e. That Mans was manipulating and/or misrepresenting its financials to try to procure a bond; and/or

    f. Other facts contrary to the Misrepresentation Letter and/or necessary to put the representations therein in proper perspective.

75. The misrepresentations and/or non-disclosures caused Plaintiff to rely on Mans to Plaintiff's detriment.

76. To reveal some information on a subject triggers the duty to reveal all known material facts. *Wirth v. Commercial Resources, Inc.,* 96 N.M. 340, 630 P.2d 292 (N.M.App., 1981)(holding real estate developers having discussed availability of water with purchasers were under duty to disclose all material facts concerning such availability).

77. In fact, Defendants failed to disclose the material facts, including Mans's true financial condition, lack of bonding capacity, and/or recent issues in Mans's attempts to procure a bond.

78. As Mans's bonding agent, Defendants possessed superior knowledge on Mans's financial condition and bonding capacity (or lack thereof).

79. On June 27, 2018, Defendants knew or had reason to know that the representations in the Misrepresentation Letter were false and/or materially misleading.

80. After June 27, Defendants learned additional facts that contradicted the Misrepresentation Letter and were required to be disclosed to put the representations in the Letter in perspective.

81. Defendants intentionally and/or negligently failed to disclose the misrepresentations and/or mis-impressions created by the Misrepresentation Letter.

82. Defendants intended Plaintiff to rely upon the lack of information and/or reasonably should have known that Plaintiff would rely.

83. Plaintiff did so rely to its detriment.

Exhibit A

84. Defendants' failure to disclose proximately caused Plaintiff damages, which Plaintiff seeks herein, in addition to punitive damages.

### VI.     UNFAIR TRADE PRACTICES

85. Plaintiff adopts by reference and incorporates the allegations contained in the above paragraphs, and particularly the factual section and Counts III, IV and V.

86. Plaintiff may also recover from Defendants for unfair trade practices under the New Mexico Unfair Trade Practices Act, N.M.S.A. § 57-12-1, et. seq.

87. Defendants knew, and certainly should have known, Plaintiff (or someone in Plaintiff's class) would rely upon the Misrepresentation Letter.

88. In 2018 and 2019, Plaintiff purchased over one million dollars of goods and services from Mans Construction related to the two Subcontracts.

89. Defendants were aware that Plaintiff entered into the Subcontracts on the expectation that Mans Construction would procure a payment and performance bond.

90. Defendants knowingly provided false and/or information in connection with those transactions, including (1) the sale of the goods and services to Mans Construction; (2) the rendering of bonding services by Defendants; and/or (3) the extension of credit in connection with the sale of goods and services.

91. Defendants knowingly provided false or misleading oral or written statements or other representations in connection with the sale of goods or services or in the extension of credit (in the regular course of the person's

trade or commerce), that may, tends to or does deceive or mislead any person, including but not limited to:

(a) causing confusion or misunderstanding as to the source, sponsorship, approval or certification of goods or services (N.M.S.A. § 57-12-2(D)(2);

(b) causing confusion or misunderstanding as to affiliation, connection or association with or certification by another (Id., § (D)(3));

(c) representing that goods or services have sponsorship, approval, characteristics, or benefits that they do not have or that a person has a sponsorship, approval, status, affiliation or connection that he does not have (Id. § (D)(5));

(d) representing that services are of a particular standard, quality or grade if they are of another ((Id. § (D)(7));

(e) making false or misleading statements of fact for the ... sales presentation of goods or services (Id. § (D)(12)); and/or

(f) using exaggeration, innuendo or ambiguity as to a material fact or failing to state a material fact if doing so deceives or tends to deceive (Id. § (D)(14)).

92. Defendants additionally engaged in "unconscionable trade practices," by undertaking an act or practice in connection with the sale or in connection with the offering for sale of any goods or services, including services provided by licensed professionals, or in the extension of credit that to a person's detriment: (1) takes advantage of the lack of knowledge, ability, experience or capacity of a person to a grossly unfair degree; or (2) results in a gross disparity between the value received by a person and the price paid.

93. Defendants withheld certain material facts from Plaintiff, including all facts

set forth above, and generally characterized as follows:

    a. that Defendants had insufficient working capital to procure a bond;

    b. that, in May 2018, Mans's primary bonding company, Hudson Insurance Company, had declined to issue a bond to Mans based on Mans' poor financial condition, including its total debt, maxed bank-line and poor debt-to-worth ratio.

    c. That, prior to the Misrepresentation Letter, other bonding companies had declined to issue Mans bonds based on Mans' poor financial condition, and particularly its working capital position;

    d. That Mans would need to improve its financial position before Defendants could procure a bond;

    e. That Mans was manipulating and/or misrepresenting its financials to try to procure a bond; and/or

    f. Other facts contrary to the Misrepresentation Letter and/or necessary to put the representations therein in proper perspective.

94. Plaintiff suffered loss of money and/or property as a result of Defendants' acts and/or practices noted above.

95. Pursuant to N.M.S.A. § 57-12-10B, Plaintiff is entitled to recover actual damages or the sum of $100, whichever is greater.

96. Moreover, because Defendants willfully engaged in the actions noted above, Plaintiff is further entitled to recover up to three times actual damages under N.M.S.A. § 57-12-10B.

97. Plaintiff further prays for attorneys' fees and costs under N.M.S.A. § 57-12-10C.

WHEREFORE, Plaintiff prays for judgment against Defendants for the following remedies:

1. General, actual and consequential damages, including but not limited to pecuniary damages, interest paid or owing, lost opportunity costs, and benefit of the bargain damages;
2. Punitive damages in an amount to be determined at trial;
3. Statutory damages up to three times the actual damages;
4. Costs, including filing fees and other fees, as allowed by statute;
5. Attorney's fees as provided under any applicable common law or statutory rights;
6. Prejudgment and post-judgment interest; and
7. Such other and further relief as the Court deems just and proper.

Respectfully submitted,

Martin, Dugan and Martin

By: *[signature]*
Kenneth D. Dugan
W.T. Martin, Jr.
509 W. Pierce Street, P.O. Box 2168
Carlsbad, NM 88221-2136
(575) 887-3528
Fax (575) 887-2136
*Attorneys for Plaintiff*

Exhibit A